Slip Op. 12-122

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ITOCHU BUILDING PRODUCTS**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 11-00208 |

## OPINION

[Denying motion for judgment on the agency record in an action contesting final results of a changed circumstances review of an antidumping duty order]

Date: September 19, 2012

  *Ned H. Marshak*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, argued for plaintiff.  With him on the brief were *Mark E. Pardo*, *Joseph M. Spraragen*, *Andrew T. Schutz*, and *Bruce M. Mitchell*.

  *Carrie A. Dunsmore*, Trial Counsel, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*.  Of counsel on the brief was *Nathaniel J. Halvorson*, Attorney-International, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

  Stanceu, Judge: This litigation concerns an antidumping duty order issued by the International Trade Administration, U.S. Department of Commerce ("Commerce" or "the Department") on certain steel nails ("subject merchandise") from the People's Republic of China ("China").  Compl. ¶ 1 (July 21, 2011), ECF No. 8.  At the request of the domestic industry, Commerce conducted a review of the order based on changed circumstances and revoked the

order as to four types of steel nails.[1]  *Certain Steel Nails From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 30,101 (May 24, 2011) ("*Final Results of Changed Circumstances Review*").  Commerce made the partial revocation effective as of August 1, 2009 despite all parties to the proceeding having requested an earlier date, January 23, 2008.  *Id.* at 30,102; Compl. ¶ 12.  Plaintiff Itochu Building Products ("Itochu" or "IBP"), a U.S. importer of subject merchandise, claims that Commerce unlawfully chose the later date and seeks a remand directing that revocation occur as of the earlier date and that plaintiff's entries be liquidated accordingly.  Compl. ¶ 3, Prayer for Relief.

     Before the court is Itochu's USCIT Rule 56.2 motion for judgment upon the agency record.  Pl.'s Rule 56.2 Mot. for J. upon the Agency R. (Dec. 5, 2011), ECF No. 19; Mem. of Law in Supp. of Pl.'s Rule 56.2 Mot. for J. upon the Agency R. (Dec. 5, 2011), ECF No. 19 ("Pl.'s Mem.").  The court denies relief because plaintiff, although having informed the

---

[1] The merchandise now excluded from the order is described as follows:

> (1) Non-collated (*i.e.*, hand-driven or bulk), two-piece steel nails having plastic or steel washers (caps) already assembled to the nail, having a bright or galvanized finish, a ring, fluted or spiral shank, an actual length of 0.500" to 8", inclusive; and an actual shank diameter of 0.1015" to 0.166", inclusive; and an actual washer or cap diameter of 0.900" to 1.10", inclusive.
>
> (2) Non-collated (*i.e.*, hand-driven or bulk), steel nails having a bright or galvanized finish, a smooth, barbed or ringed shank, an actual length of 0.500" to 4", inclusive; an actual shank diameter of 0.1015" to 0.166", inclusive; and an actual head diameter of 0.3375" to 0.500", inclusive.
>
> (3) Wire collated steel nails, in coils, having a galvanized finish, a smooth, barbed or ringed shank, an actual length of 0.500" to 1.75", inclusive; an actual shank diameter of 0.116" to 0.166", inclusive; and an actual head diameter of 0.3375" to 0.500", inclusive.
>
> (4) Non-collated (*i.e.*, hand-driven or bulk), steel nails having a convex head (commonly known as an umbrella head), a smooth or spiral shank, a galvanized finish, an actual length of 1.75" to 3", inclusive; an actual shank diameter of 0.131" to 0.152", inclusive; and an actual head diameter of 0.450" to 0.813", inclusive.

*Certain Steel Nails From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 30,101 (May 24, 2011).

Department of its position in favor of the earlier effective date prior to the publication of the preliminary results of the changed circumstances review, declined to comment in response to the published notice of the preliminary results and thereby waived its previous objection to the later (August 1, 2009) effective date for the partial revocation of the order.

## I. BACKGROUND

On July 16, 2007, Commerce initiated an investigation of sales at less than fair value of certain steel nails from China. *Certain Steel Nails from the People's Republic of China & the United Arab Emirates: Initiation of Antidumping Duty Investigations*, 72 Fed. Reg. 38,816 (July 16, 2007). Commerce issued an affirmative preliminary less-than-fair-value determination on January 23, 2008. *Certain Steel Nails From the People's Republic of China: Prelim. Determination of Sales at Less Than Fair Value & Partial Affirmative Determination of Critical Circumstances and Postponement of Final Determination*, 73 Fed. Reg. 3,928 (Jan. 23, 2008). Commerce required, as of January 23, 2008, that all entries of subject merchandise be accompanied by cash deposits in the amount of estimated antidumping duties and instructed U.S. Customs and Border Protection ("Customs") to suspend liquidation of subject entries made on and after that date. *Id.* at 3,942. Commerce issued an affirmative final less-than-fair-value determination on June 16, 2008, *Certain Steel Nails from the People's Republic of China: Final Determination of Sales at Less than Fair Value & Partial Affirmative Determination of Critical Circumstances*, 73 Fed. Reg. 33,977 (June 16, 2008), and, on August 1, 2008, published the antidumping duty order, *Notice of Antidumping Duty Order: Certain Steel Nails from the People's Republic of China*, 73 Fed. Reg. 44,961 (Aug. 1, 2008).

On September 22, 2009, Commerce initiated the first periodic administrative review of the antidumping duty order on steel nails from China. *Initiation of Antidumping &*

*Countervailing Duty Admin. Reviews & Request for Revocation in Part*, 74 Fed. Reg. 48,224, 48,226 (Sept. 22, 2009).  The review pertained to entries made from the first date on which liquidation was suspended, January 23, 2008, until July 31, 2009.  *Id.*

On February 11, 2011, a domestic producer filed a request, on behalf of itself and the domestic industry, that Commerce revoke the order as to four types of nails through a changed circumstances review.  *Certain Steel Nails From the People's Republic of China: Initiation & Prelim. Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 22,369 (Apr. 21, 2011) ("*Initiation Notice*").  That domestic producer, Mid Continent Nail Corporation ("Mid Continent"), sought, as an effective date for the proposed partial revocation, January 23, 2008, the date of the beginning of the suspension of liquidation of entries of subject merchandise.  *Id.* at 22,371.  Itochu requested the same effective date in a February 22, 2011 meeting with Commerce.  *Id.* at 22,370.  In a March 1, 2011 submission, another domestic producer, National Nail Corp., also requested the January 23, 2008 effective date.  *Id*.  No other parties participated in the changed circumstances review.

Commerce published the final results of the first administrative review of the order ("Final Results") on March 23, 2011.  *Certain Steel Nails From the People's Republic of China: Final Results of the First Antidumping Duty Admin. Review*, 76 Fed. Reg. 16,379 (Mar. 23, 2011).  Commerce then issued amended final results ("Amended Final Results") on April 26, 2011, responding to allegations of ministerial errors in the March 23 results.  *Certain Steel Nails From the People's Republic of China: Amended Final Results of the First Antidumping Duty Admin. Review*, 76 Fed. Reg. 23,279 (Apr. 26, 2011).

On April 21, 2011, five days prior to the issuance of the amended final results of the administrative review, Commerce issued a combined notice of initiation of a changed

circumstances review under Section 751(b) of the Tariff Act, 19 U.S.C. § 1675(b), and notice of the preliminary results of that review. *Initiation Notice*, 76 Fed. Reg. at 22,369. This notice announced that Commerce preliminarily had determined that the order would be revoked as to the four types of nails identified by Mid Continent. *Id.* at 22,371. The notice acknowledged that Mid Continent requested revocation of the order as of January 23, 2008 but declined to adopt that date, stating that "the Department does not find this to be consistent with its recent practice." *Id.* The Department explained that its practice was "to revoke (in whole or in part) an antidumping duty order so that the effective date of revocation covers entries that have not been subject to a completed administrative review." *Id.* Commerce chose as the revocation date August 1, 2009, which it characterized as "the earliest date for which entries of certain steel nails have not been subject to a completed administrative review." *Id.*

Commerce provided an opportunity for comments on the April 21, 2011 notice, stating that "[i]nterested parties are invited to comment on these preliminary results. Written comments may be submitted no later than 14 days after the date of publication of these preliminary results." *Id.* Commerce then stated that it would "issue the final results of this changed circumstances review . . . no later than 270 days after the date on which this review was initiated, or within 45 days if all parties agree to our preliminary results. *See* 19 CFR 351.216(e)." *Id.*

On May 24, 2011, Commerce issued the final results of the changed circumstances review. Commerce announced that no comments had been received in response to the publication of the combined notice initiating, and announcing preliminary results of, the changed circumstances review, that the order would be revoked as to the four types of nails for which revocation had been requested, and that the partial revocation would take effect as of August 1, 2009. *Final Results of Changed Circumstances Review*, 76 Fed. Reg. at 30,101-02. In the notice

announcing the final results of the review, the Department reiterated the reason for its choice of the August 1, 2009 effective date, stating that "[t]he Department's recent practice has been to select the date after the most recent period for which a review was completed or issued assessment instructions [*sic*] as the effective date." *Id.* at 30,102 n.5.

Challenging the decision to select the August 1, 2009 effective date, plaintiff brought this action by filing a summons on June 22, 2011 and a complaint on July 21, 2011. Summons, ECF No. 1; Compl. Itochu filed its motion for judgment on the agency record on December 5, 2011. On September 13, 2012, the court held oral argument on this motion.

## II. DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2006), which grants this court jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006), including the present action challenging the final results of a review based on changed circumstances issued under section 751 of the Tariff Act, 19 U.S.C. § 1675(b). The court must "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2006).

The essence of plaintiff's claims is that the Department acted contrary to law in refusing to adopt the requested effective date of January 23, 2008 and instead making the partial revocation of the order effective as of August 1, 2009. *See* Pl.'s Mem. 3 (claiming that the Department's decision "is contrary to administrative practice, judicial precedent, [and] basic principles of fairness, . . . is inconsistent with the fundamental purpose of the [antidumping duty] law," and lacks a rational basis). As relief, plaintiff seeks an order remanding to Commerce the

final results of the changed circumstances review with instructions to issue new final results with an effective date of January 23, 2008 for the partial revocation and to direct Customs to liquidate plaintiff's entries of the excluded nails entered on an after that date without the assessment of antidumping duties. *Id*. at 35-36 and draft order.

Without reaching the question of whether the decision contested in this case was lawful, the court concludes that plaintiff is not entitled to relief on its claims. Itochu waived any objection to the decision Commerce reached on the question of the effective date for the partial revocation, as set forth in the final results of the changed circumstances review, when it declined to file comments in response to the combined notice of initiation and notice of preliminary results of that review.

Section 301 of the Customs Courts Act of 1980 provides that, in actions such as this one, "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d) (2006). It is appropriate here to require exhaustion because Commerce expressly invited comments in the notice announcing the preliminary results of the changed circumstances review. *Initiation Notice*, 76 Fed. Reg. at 22,371 ("Interested parties are invited to comment on these preliminary results. Written comments may be submitted no later than 14 days after the date of publication . . . ."). When no party submitted comments, *Final Results*, 76 Fed. Reg. at 30,101, Commerce was justified in presuming that all interested parties now concurred in all aspects of the preliminary results of the changed circumstances review, including the choice of the effective date for the partial revocation, regardless of whether those interested parties earlier had voiced objection. In the absence of any party's taking a position contrary to the preliminary results, the Department adopted the preliminary results as the final results, without change. *Id.*

The exhaustion requirement and the related doctrine of waiver require an interested party to raise all relevant arguments at the time Commerce requests comments, even if the party raised an argument previously. *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). As the Supreme Court has explained, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *L.A. Tucker Truck Lines*, 344 U.S. at 37.

In *Mittal Steel Point Lisas*, the Court of Appeals held that Gerdau Ameristeel Corp., a defendant-intervenor in litigation arising out of an antidumping duty order, waived its earlier-expressed argument that Commerce should calculate an exporter's credit expenses based on export date rather than invoice date. 548 F.3d at 1382-83. Gerdau Ameristeel had raised that argument in the proceedings before Commerce and again in litigation before this Court. *Id.* After Commerce on remand decided to calculate credit expenses based on invoice date, Gerdau Ameristeel failed to preserve its position when it did not take the opportunity to comment on the draft remand results. *Id.* Despite having raised its argument earlier, "Gerdau was procedurally required to raise the issue before Commerce at the time Commerce was addressing the issue." *Id.* In a similar manner, Itochu waived its objection to an effective date of August 1, 2009 by not commenting in response to the notice announcing the preliminary results of the changed circumstances review. Due to the failure to exhaust administrative remedies, it is appropriate that the court deny relief on Itochu's claims.

Plaintiff advances several reasons why the court should not apply the exhaustion requirement in this case. First, plaintiff points out that the notice announcing the preliminary results of the changed circumstances review did not solicit case briefs pursuant to 19 U.S.C. § 309(b)(1) and did not cite 19 C.F.R. § 351.309(c), a provision in the Department's regulations that, in paragraph (2), instructs parties that "[t]he case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results." Pl.'s Reply to Def.'s Opp'n to Rule 56.2 Mot. for J. upon the Agency R. 6-8 (Mar. 16, 2012), ECF No. 27. ("Pl.'s Reply"). Plaintiff does not argue that Commerce was *required* by its regulations to take these steps (and the court would see no merit in such an argument), instead arguing that had Commerce cited § 351.309(c) and advised all parties of the requirement to file case briefs, "Plaintiff would have been on notice that it arguably would lose its opportunity to challenge the Department's determination in this Court by not filing a post-preliminary Case Brief." *Id.* at 8. This argument is unconvincing. The requirement to exhaust administrative remedies arose from the exhaustion doctrine as codified in 28 U.S.C. § 2637(d), independently of § 351.309(c)(2). The requirement to exhaust administrative remedies therefore applies in this case despite the lack of a reference to § 351.309(c) in the notice announcing the preliminary results of the changed circumstances review.

In this case, Commerce cannot be faulted for the manner in which it requested comments. The regulation provides that "[a]ny interested party . . . may submit a 'case brief'" in response to "publication of the preliminary results" of a changed circumstances review, § 351.309(c)(1)(ii), and Itochu was free to file a case brief, if it so chose, within the 14-day time limit set forth in the Department's notice. Commerce did not exceed its discretion by inviting comments without requiring that such comments be in the form of case briefs. Nor can Commerce's exercising its

discretion in this way reasonably be construed as an indication that an interested party need not file comments in order to preserve its position for a future judicial challenge to the final results of the changed circumstances review.

Plaintiff argues, next, that any attempt it might have made to convince the Department to change its mind on the issue of the effective date "would have been an exercise in futility." Pl.'s Reply 8. Futility is a recognized exception to the exhaustion requirement, but it is a narrow one and is not satisfied merely by circumstances indicating that an agency would be unlikely to adopt the position a party failed to assert. *Corus Staal BV v. United States*, 502 F. 3d 1370, 1379 (Fed. Cir. 2007). Here, Commerce specifically requested comments on the preliminary results of the changed circumstances review and did not indicate in its notice that there would be no possibility of a change in position on the effective date issue.

Third, Itochu maintains that its filing comments objecting to the August 1, 2009 effective date "would have resulted in a needless 225 day delay in revocation," Pl.'s Reply 8, and at oral argument asserted that Itochu would have be prejudiced financially by the resulting delay in receiving refunds of duty deposits on its entries. This argument is also unconvincing. The Department's regulations, in 19 C.F.R. § 315.216(e), provide for an expedited issuance of final results, *i.e.*, within 45 days, "if all parties to the proceeding agree to the outcome of the review," and provide otherwise that the final results will issue in 270 days. It was reasonable for Commerce to construe the words "outcome of the review," as it apparently did here, to refer to the preliminary results. Moreover, the delay posited by Itochu rests on speculation. Although it is possible that Commerce would have taken the full 270 days had any party raised any objection, it is also possible that Commerce would not have required the full period. Itochu could have attempted to protect its interests by filing a short comment submission preserving its

position on the effective date but also urging that Commerce, in any event, issue its final results as expeditiously as possible.

Plaintiff also asserts the "pure legal question" exception to the exhaustion requirement, arguing that "[i]n the instant case, IBP argued before the Department that as a matter of law the Department was required to revoke the [antidumping duty] order as of the date requested by Petitioner and to apply that decision to all unliquidated entries." Pl.'s Reply 10. Plaintiff argues, further, that "[t]he issue raised by IBP did not require any additional fact finding by the Department and judicial review would not be significantly aided by an additional administrative decision on this issue." *Id.* at 11. This argument fails because Commerce was *not* required by law to revoke the order as of the date requested by the petitioner. *See* 19 U.S.C. § 1675(d)(3). The date of revocation is a matter for the Department's reasonable exercise of discretion, not a pure question of law.

Here, Commerce provided only a cursory explanation of its reason for exercising its discretion in the way that it did (referring only to a recent practice), but the court will not review that reasoning on the merits when plaintiff, like the other interested parties, lodged no formal objection to the August 1, 2009 effective date in response to the published notice. In these circumstances, the court's reviewing the adequacy of the Department's reasoning would be particularly unfair to Commerce, whose dispensing with a better explanation is more understandable than it would have been had plaintiff filed such a formal objection. As the court observed previously, Commerce was justified, at the close of the comment period, in presuming that Itochu no longer objected to the decision to make the partial revocation effective as of August 1, 2009 rather than January 23, 2008.

### **III. CONCLUSION**

In summary, plaintiff failed to exhaust its administrative remedies prior to bringing its judicial challenge to the final results of the changed circumstances review when it declined to file comments in response to the Department's published notice announcing the preliminary results. In so doing, plaintiff waived any claims pertaining to the Department's choice of effective date for the partial revocation of the order. Considering all relevant circumstances, the court finds on the record before it no justification for making an exception to the exhaustion requirement. Pursuant to USCIT Rule 56.2, the court will enter judgment in favor of defendant.

                                                                                          /s/ Timothy C. Stanceu
                                                                                         Timothy C. Stanceu
                                                                                         Judge

Dated: September 19, 2012
       New York, New York

Slip Op. 12-122

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ITOCHU BUILDING PRODUCTS**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 11-00208 |

## **JUDGMENT**

Upon the court's review of plaintiff's complaint, plaintiff's motion for judgment upon the agency record, defendant's response to plaintiff's motion, the determination in *Certain Steel Nails From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 30,101 (May 24, 2011), issued by the International Trade Administration, United States Department of Commerce ("Commerce"), and all relevant papers and proceedings had herein, in accordance with the court's Opinion in this action, and upon due deliberation, it is hereby

**ORDERED** that plaintiff's motion for judgment upon the agency record be, and hereby is, denied; and it is further

**ORDERED** that, pursuant to USCIT Rule 56.2(b), judgment be, and hereby is, entered for defendant.

                                                  /s/ Timothy C. Stanceu<br>
                                                  Timothy C. Stanceu<br>
                                                  Judge

Dated: September 19, 2012<br>
       New York, New York