Slip Op. 14-37

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ITOCHU BUILDING PRODUCTS**, Plaintiff, v. **UNITED STATES**, Defendant. | Before: Timothy C. Stanceu, Judge<br><br>Court No. 11-00208 |

OPINION AND ORDER

[Remanding the final results of a changed circumstances review of an antidumping duty order on certain steel nails from China]

Date: April 8, 2014

Ned H. Marshak, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, argued for plaintiff. With him on the brief were Mark E. Pardo, Joseph M. Spraragen, Andrew T. Schutz, and Bruce M. Mitchell.

Carrie A. Dunsmore, Trial Counsel, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Nathaniel J. Halvorson, Attorney–International, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Stanceu, Judge: This case arose from a challenge to a final determination that the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued in a "changed circumstances" review of an antidumping duty order on certain steel nails from the People's Republic of China ("China" or the "PRC"). *See Certain Steel Nails From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 30,101, 30,101 (May 24, 2011) ("*Final Results*").

Commerce initiated the changed circumstances review in response to a request by one of the petitioners in the antidumping duty investigation who requested revocation of the antidumping duty order (the "Order") as to four types of steel nails. *Id.* Commerce agreed to the partial revocation of the Order and chose August 1, 2009 as the effective date. *Id.*

Plaintiff Itochu Building Products ("Itochu" or "IBP"), a U.S. importer of subject merchandise and a participant in the changed circumstances review, brought this action to contest the Department's final determination (the "*Final Results*"). Specifically, Plaintiff challenged the August 1, 2009 effective date, arguing that Commerce should have made the partial revocation effective as of January 23, 2008, the date of the preliminary determination in the original antidumping duty investigation and the date supported by the parties to the review. The court denied relief on plaintiff's claim on the ground that plaintiff failed to exhaust administrative remedies. *Itochu Bldg. Products v. United States*, 36 CIT __, __, 865 F. Supp. 2d 1332, 1339 (2012) ("*Itochu I*"), *rev'd and remanded*, 733 F.3d 1140 (Fed. Cir. 2013).

Before the court is the mandate issued by the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") following *Itochu Bldg. Products v. United States*, 733 F.3d 1140 (Fed. Cir. 2013) ("*Itochu II*"), which reversed the judgment the court issued in *Itochu I* and remanded for further proceedings. CAFC Mandate in Appeal # 13-1044 (Nov. 22, 2013), ECF No. 40. Addressing the merits of plaintiff's claim, the court now orders Commerce to reconsider the decision on the effective date of the partial revocation.

## II. Background

The background of this litigation is described in the court's prior opinion and is supplemented herein. *See Itochu I*, 36 CIT at __, 865 F. Supp. 2d at 1335-36.

Commerce issued the Order on August 1, 2008.[1] *Notice of Antidumping Duty Order: Certain Steel Nails From the People's Republic of China*, 73 Fed. Reg. 44,961 (Aug. 1, 2008) ("*Order*"). On September 22, 2009, Commerce initiated the first administrative review of the Order, which pertained to entries of subject merchandise made during a period of January 23, 2008 through July 31, 2009 ("period of review" or "POR"). *Initiation of Antidumping Duty & Countervailing Duty Admin. Reviews & Req. for Revocation in Part*, 74 Fed. Reg. 48,224 (Sept. 22, 2009). Commerce issued the preliminary results of the first

---

[1] The scope language in the antidumping duty order (the "Order") provides that:

> The merchandise covered by this proceeding includes certain steel nails having a shaft length up to 12 inches. Certain steel nails include, but are not limited to, nails made of round wire and nails that are cut. Certain steel nails may be of one piece construction or constructed of two or more pieces. Certain steel nails may be produced from any type of steel, and have a variety of finishes, heads, shanks, point types, shaft lengths and shaft diameters. Finishes include, but are not limited to, coating in vinyl, zinc (galvanized, whether by electroplating or hotdipping one or more times), phosphate cement, and paint. Head styles include, but are not limited to, flat, projection, cupped, oval, brad, headless, double, countersunk, and sinker. Shank styles include, but are not limited to, smooth, barbed, screw threaded, ring shank and fluted shank styles. Screw-threaded nails subject to this proceeding are driven using direct force and not by turning the fastener using a tool that engages with the head. Point styles include, but are not limited to, diamond, blunt, needle, chisel and no point. Finished nails may be sold in bulk, or they may be collated into strips or coils using materials such as plastic, paper, or wire. Certain steel nails subject to this proceeding are currently classified under the Harmonized Tariff Schedule of the United States ("HTSUS") subheadings 7317.00.55, 7317.00.65 and 7317.00.75.

*Notice of Antidumping Duty Order: Certain Steel Nails From the People's Republic of China*, 73 Fed. Reg. 44,961, 44,961 (Aug. 1, 2008) ("*Order*"). As promulgated, the Order contained an exclusion, as follows:

> Excluded from the scope of this proceeding are roofing nails of all lengths and diameter, whether collated or in bulk, and whether or not galvanized. Steel roofing nails are specifically enumerated and identified in ASTM Standard F 1667 (2005 revision) as Type I, Style 20 nails.

*Id.*

administrative review on September 15, 2010. *Certain Steel Nails From the People's Republic of China: Notice of Prelim. Results & Prelim. Rescission, in Part, of the Antidumping Duty Admin. Review*, 75 Fed. Reg. 56,070 (Sept. 15, 2010).

On February 11, 2011, while the first administrative review was ongoing, Mid Continent Nail Corporation ("Mid Continent"), a petitioner in the antidumping duty investigation, requested a review based on changed circumstances, seeking revocation of the Order as to "[a]ll unliquidated and future entries" of four types of steel nails.[2] *Req. for Changed Circumstances Review* 1-3 (Admin.R.Doc. No. 1). *See* Tariff Act of 1930 ("Tariff Act") § 751(b), 19 U.S.C. § 1675(b); 19 C.F.R. §§ 351.216, 351.221(c)(3).[3] Mid Continent sought revocation of the Order as to these four types of nails on the ground that "the domestic industry no longer has an interest in maintaining the *Order* with respect these specific products." *Req. for Changed Circumstances Review* 4. *See id.* 1-2 & n.2, Attach. 1. *See* also 19 C.F.R. § 351.222(g)(1)(i). Mid Continent requested that the partial revocation be "effective as to all unliquidated entries back to the date of the preliminary determination in the original investigation," *i.e.*, January 23, 2008. *Req. for Changed Circumstances Review* 4. *See Certain Steel Nails From the People's Republic of China: Prelim. Determination of Sales at Less Than Fair Value & Partial Affirmative Determination of Critical Circumstances & Postponement of Final Determination*, 73 Fed.

---

[2] For three of the four types of nails that were the subject of its request for a review based on changed circumstances, Mid Continent Nail Corporation requested that the revocation pertain to merchandise entries "whose packaging and packing marking . . . are clearly and prominently labeled 'Roofing' or 'Roof' nails." *Req. for Changed Circumstances Review* 3 (Admin.R.Doc. No. 1) (Feb. 11, 2011). Commerce did not grant this request in the language effecting the partial revocation. *Certain Steel Nails From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 30,101, 30,101 (May 24, 2011) ("*Final Results*").

[3] All statutory citations herein are to the 2006 edition of the United States Code and all citations to regulations are to the 2010 edition of the Code of Federal Regulations.

Reg. 3,928 (Jan. 23, 2008).  Two other petitioners in the antidumping duty investigation submitted comments in support of Mid Continent's requested partial revocation and revocation date.  *See Letter from Nat'l Nail Corp.* 1-2 (Mar. 1, 2011) (Admin.R.Doc. No. 3); *Letter from United Sources Inc.* 1-2 (Mar. 24, 2011) (Admin.R.Doc. No. 8).[4]  Itochu also filed comments supporting Mid Continent's request, including the proposed scope and the proposed January 23, 2008 effective date.  *Itochu's Comments on the Changed Circumstances Review* 2 (Feb. 22, 2011) (Admin.R.Doc. No. 2).  On March 8, 2011, counsel for Itochu met with Commerce officials and requested designation of January 23, 2008 as the effective revocation date.  Mem. of Law in Supp. of Pl.'s Rule 56.2 Mot. for J. upon the Agency R. ("Pl.'s Mem.") at Attach. 1 (Dec. 5, 2011), ECF No. 19.

Commerce issued the final results of the first administrative review on March 23, 2011, *Certain Steel Nails From the People's Republic of China: Final Results of the First Antidumping Duty Admin. Review*, 76 Fed. Reg. 16,379 (Mar. 23, 2011), and, in response to allegations of ministerial errors, issued amended final results on April 26, 2011, *Certain Steel Nails From the People's Republic of China: Amended Final Results of the First Antidumping Duty Admin. Review*, 76 Fed. Reg. 23,279 (Apr. 26, 2011).  On April 21, 2011, five days before publishing the amended final results, Commerce issued a combined notice initiating an expedited changed circumstances review of the Order under 19 U.S.C. § 1675(b) and announcing the Department's

---

[4] There were six petitioners in the antidumping investigation.  Int'l Trade Admin., Analysis of Industry Support 4 (July 11, 2007) in *Req. for Changed Circumstances Review* at Attach 1.  Commerce made no finding in the *Final Results*, 76 Fed. Reg. at 30,101, that the "[p]roducers accounting for substantially all of the production of the domestic like product to which the order (or the part of the order to be revoke) . . . pertains have expressed a lack of interest in the order, in whole or in part," 19 C.F.R. § 351.222(g)(1)(i).  This case does not involve a claim that the producers who supported the changed circumstances request did not account for substantially all production.

preliminary decision to revoke the Order as to four types of steel nails ("*Preliminary Results*"). *Certain Steel Nails From the People's Republic of China: Initiation & Prelim. Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 22,369, 22,369, 22,371 (Apr. 21, 2011) ("*Prelim. Results*"). Commerce preliminarily chose as the revocation date August 1, 2009, which it characterized as "the earliest date for which entries of certain steel nails have not been subject to a completed administrative review." *Id.* at 22,371. Commerce invited interested parties to comment on the *Preliminary Results*, *id.*, but no party commented within the specified period, *Final Results*, 76 Fed. Reg. at 30,101. On May 24, 2011, Commerce issued the *Final Results*, in which it revoked the Order as to the four types of steel nails, effective August 1, 2009.[5] *Id.* at 30,102.

---

[5] The merchandise now excluded from the Order as a result of the Department's changed circumstances review is as follows:

> (1) Non-collated (*i.e.*, hand-driven or bulk), two-piece steel nails having plastic or steel washers (caps) already assembled to the nail, having a bright or galvanized finish, a ring, fluted or spiral shank, an actual length of 0.500" to 8", inclusive; and an actual shank diameter of 0.1015" to 0.166", inclusive; and an actual washer or cap diameter of 0.900" to 1.10", inclusive.
> (2) Non-collated (*i.e.*, hand-driven or bulk), steel nails having a bright or galvanized finish, a smooth, barbed or ringed shank, an actual length of 0.500" to 4", inclusive; an actual shank diameter of 0.1015" to 0.166", inclusive; and an actual head diameter of 0.3375" to 0.500", inclusive.
> (3) Wire collated steel nails, in coils, having a galvanized finish, a smooth, barbed or ringed shank, an actual length of 0.500" to 1.75", inclusive; an actual shank diameter of 0.116" to 0.166", inclusive; and an actual head diameter of 0.3375" to 0.500", inclusive.
> (4) Non-collated (*i.e.*, hand-driven or bulk), steel nails having a convex head (commonly known as an umbrella head), a smooth or spiral shank, a galvanized finish, an actual length of 1.75" to 3", inclusive; an actual shank diameter of 0.131" to 0.152", inclusive; and an actual head diameter of 0.450" to 0.813", inclusive.

*Final Results*, 76 Fed. Reg. at 30,101.

Challenging the Department's selection of the August 1, 2009 effective date, plaintiff brought this action by filing a summons on June 22, 2011 and a complaint on July 21, 2011. Summons, ECF No. 1; Compl., ECF No. 8. Plaintiff filed a motion for judgment on the agency record, Pl.'s Rule 56.2 Mot. for J. upon the Agency R. 1 (Dec. 5, 2011), ECF No. 19 ("Pl.'s Mot."); Pl.'s Mem. 1, which defendant opposed, Def.'s Memo. in Opp'n to Pl.'s Rule 56.2 Mot. for J. upon the Agency R. 1 (Feb. 2, 2012), ECF No. 23 ("Def.'s Opp'n"). On March 28, 2012, plaintiff made a submission advising the court of the intervening decision in *Heveafil Sdn. Bhd v. United States*, 36 CIT __, Slip Op. 12-38 (Mar. 21, 2012) ("*Heveafil*"). *Letter Advising the Court of the Recent Decision in Heveafil Sdn. Bhd v. United States, Slip Op. 12-38* (Mar. 28, 2012), ECF No. 29. On September 13, 2012, the court held oral argument.

Concluding that Itochu failed to exhaust its administrative remedies, the court denied relief on plaintiff's claim. *Itochu I*, 36 CIT at __, 865 F. Supp. 2d at 1337-38 (citing *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008)). The court reasoned that Itochu had waived its objection to the August 1, 2009 date when it declined to comment on the Department's choice of this revocation date in the *Preliminary Results* despite the Department's specifically having requested comment on this issue. *Id.*

On appeal, the Court of Appeals reversed the court's judgment, determining that application of the exhaustion doctrine was not "'appropriate'" because "[i]n the circumstances here, requiring exhaustion served no discernible practical purpose and would have risked harm to Itochu," *Itochu II*, 733 F.3d at 1142, by delaying the changed circumstances review, *id.* at 1147. The Court of Appeals determined that Commerce had sufficient opportunity to consider Itochu's objections to the August 1, 2009 effective date due to Itochu's argument in favor of the earlier

date before Commerce published the *Preliminary Results*. *Id.* at 1146. The Court of Appeals remanded the case for further proceedings. *Id.* at 1148.

## II. DISCUSSION

Because *Itochu I* did not reach the question of whether the Department's use of the August 1, 2009 effective date was lawful, the court now addresses this question in response to the mandate issued by the Court of Appeals.

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants this Court jurisdiction over any civil action commenced under section 516A of the Tariff Act, 19 U.S.C. § 1516a(a)(2)(B)(iii), including an action challenging the final results of a changed circumstances review issued under section 751 of the Tariff Act, 19 U.S.C. § 1675(b). The court must "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id.* § 1516a(b)(1)(B)(i).

Commerce conducts a changed circumstances review when an interested party submits a request that "shows changed circumstances sufficient to warrant a review" of an antidumping duty order. *Id.* § 1675(b). Following a review, Commerce may revoke an antidumping duty order "in whole or in part." *Id.* § 1675(d)(1). Providing no standard by which Commerce is to determine an effective date for the revocation, the statute affords Commerce considerable discretion. *See id.* § 1675(d)(3) (a determination to revoke, in whole or in part, "shall apply with respect to unliquidated entries of the subject merchandise which are entered, or withdrawn from warehouse, for consumption on or after the date determined by the administering authority"). At issue in this case is the Department's exercise of that discretion to make the partial revocation effective as of August 1, 2009. In doing so, Commerce rejected the position of all interested

parties that the effective date of the revocation should be January 23, 2008, the date of the preliminary determination in the original investigation.

In the *Preliminary Results*, Commerce rejected the January 23, 2008 effective date because it was not "consistent with its recent practice" of revoking an order "so that the effective date of revocation covers entries that have not been subject to a completed administrative review." *Prelim. Results*, 76 Fed. Reg. at 22,371.  In the *Final Results*, Commerce addressed the revocation date issue in the same way but only in a footnote, in which it stated that "[t]he Department's recent practice has been to select the date after the most recent period for which a review was completed or issued assessment instructions as the effective date." *Final Results*, 76 Fed. Reg. at 30,102 n.5.  As examples of its practice, the footnote cited two administrative determinations issued in 2004; one involved a changed circumstances review of an antidumping duty order on coumarin from China, the other a changed circumstances review of an antidumping duty order on Chinese bulk aspirin.  *Id.* (citing *Notice of the Final Results of Changed Circumstances Review & Revocation of the Antidumping Order: Coumarin from the People's Republic of China*, 69 Fed. Reg. 24,122 (May 3, 2004); *Notice of Final Results of Changed Circumstances Review & Revocation of the Antidumping Duty Order: Bulk Aspirin from the People's Republic of China,* 69 Fed. Reg. 77,726 (Dec. 28, 2004)).

Plaintiff argues that the Department's choice of the August 1, 2009 effective date over the January 23, 2008 date is irrational, "contrary to administrative practice, judicial precedent, basic principles of fairness, and is inconsistent with the fundamental purpose" of the antidumping laws.  Pl.'s Mem. 3.  Plaintiff seeks an order directing Commerce to issue new final results of the changed circumstances review that adopt an effective date of January 23, 2008.  *Id.* at 35.  Defendant counters that the *Final Results* must be sustained because the date of

revocation is made a matter of the Department's discretion by 19 U.S.C. § 1675(d)(3), because the date Commerce chose was reasonable, and because Commerce permissibly followed its practice "to select the date following the last date of the most recently completed review." Def.'s Opp'n 13-14.

In reviewing an agency decision, a court will "look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). The court must reject as arbitrary and capricious any determination that "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*").

In the changed circumstances review, Commerce cloaked its decision in a "practice" without explaining the reasons why it established such a practice in the first place. The *Final Results* offer no explanation as to why a revocation date should not precede the date of a completed administrative review of an order. Commerce failed to demonstrate that the practice it identified pertains, or should pertain, to situations in which all parties to the proceeding favored an effective date occurring before the date of completion of the most recent administrative review and in which the choice of effective date was not in dispute among those parties.

The Department's mere citation to a practice is insufficient to save the reviewed decision from arbitrariness. Lacking is a discussion of the competing factors that must inform any rational selection of an effective date for a partial revocation of an antidumping duty order following a changed circumstances review. That all parties to the review supported revocation

as of the date of the preliminary determination must be viewed as one of those factors, yet it was one that received no apparent consideration in the *Final Results*.

Plaintiff argues that, consistent with judicial precedent and past Department practice, Commerce should have adopted the revocation date proposed by Mid Continent. Pl.'s Mem. 2, 13-35. Plaintiff seeks an order compelling Commerce to apply the partial revocation to all entries of merchandise affected by the changed circumstances review that were made on or after January 23, 2008 and that remain unliquidated. *Id.* at 35-36, proposed order. Further, plaintiff argues that "[t]he facts in this case compel a conclusion that the Department should have agreed to Petitioner's requested revocation date." *Id.* at 2.

Plaintiff cites *Ugine & Alz Belgium, N.V. v. United States*, 31 CIT 1536, 517 F. Supp. 2d 1333 (2007), *aff'd* 551 F.3d 1339 (Fed. Cir. 2009), and *Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1346-51 (Fed. Cir. 2011), in arguing that judicial precedent compels a conclusion that revocation should apply to all unliquidated entries. *Id.* at 30-33. Neither of these decisions establishes a precedent under which Commerce was required to make its revocation applicable to all unliquidated entries on the facts of this case. Plaintiff also directs the court's attention to the decision of this Court in *Heveafil*, 36 CIT __, Slip Op. 12-38, in support of its argument that the Department's decision must be held to be unreasonable. *Heveafil* is not a binding precedent, and, having arisen from a factual situation in which the sole producer of the domestic like product had undergone bankruptcy and ceased operations, was not decided upon facts analogous to those relevant here. *See Heveafil*, 36 CIT at __, Slip Op. 12-38, at 2-3.

Plaintiff's argument pertaining to administrative precedent is also insufficient to support a conclusion that Commerce was required to adopt the January 23, 2008 effective date. Plaintiff cites various administrative decisions (other than the decisions involving coumarin and bulk

aspirin, discussed above) that it claims support a conclusion that Commerce has a "practice of selecting an effective date for a changed circumstances revocation requested by the domestic industry." Pl.'s Mem. 24. If such a practice exists, it cannot bind Commerce beyond imposing an obligation to explain any departure made in an individual instance. *See SKF USA Inc. v. United States*, 630 F.3d 1365, 1373 (Fed. Cir. 2011) ("*SKF*") ("When an agency changes its practice, it is obligated to provide an adequate explanation for the change."). It certainly is not a basis upon which the court could order Commerce to adopt the earlier effective date. On remand, Commerce should address whether an administrative practice such as plaintiff describes exists and, if so, the reasons why it chooses to follow it or not follow it in the circumstances posed by the changed circumstances review.

For the reasons stated above, the court declines to issue the specific relief plaintiff seeks. The court must order a remand of the *Final Results* due to the arbitrariness of that determination, not because it concludes that the effective date of August 1, 2009 was, *per se*, impermissible under 19 U.S.C. § 1675(d)(3) or disallowed under binding judicial precedent. The statutory provision, as discussed above, provides Commerce with discretion in the selection of the effective date for a partial revocation following a changed circumstances review, but that discretion may not be exercised arbitrarily so as to decide the question presented without considering the relevant and competing considerations. On remand, Commerce must reconsider its decision as to effective date and provide adequate reasoning, grounded in the facts and circumstances of this case, for any decision it reaches.

### III. Conclusion and Order

For the reasons discussed in the foregoing, the Department's choice of an August 1, 2009 effective date for the partial revocation of the Order, as set forth in the *Final Results*, cannot be

sustained.  Therefore, upon consideration of all papers and proceedings in this case, and upon due deliberation, it is hereby

**ORDERED** that the final determination of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in *Certain Steel Nails From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review*, 76 Fed. Reg. 30,101 (May 24, 2011) be, and hereby is, set aside as unlawful and remanded for reconsideration and redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce shall file, within sixty (60) days of the date of this Opinion and Order, a new determination upon remand ("remand redetermination") that conforms to this Opinion and Order and redetermines the effective date of partial revocation as necessary; it is further

**ORDERED** that plaintiff may file comments on the remand redetermination within thirty (30) days from the date on which the remand redetermination is filed; and it is further

**ORDERED** that defendant may file a response to the aforementioned comments within fifteen (15) days from the date on which the last comment is filed.

                                                                    /s/ Timothy C. Stanceu
                                                                    Timothy C. Stanceu
                                                                    Judge

Dated:  April 8, 2014
            New York, New York